## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARL LESTER DAVIDSON III,     )
    )
       Plaintiff,     )
    )     **CIVIL ACTION**
v.     )
    )     **No. 17-2139-JWL**
NANCY A. BERRYHILL,     )
**Acting Commissioner of Social Security,**     )
    )
       Defendant.     )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) finding medical improvement related to Plaintiff's ability to work on June 1, 2013, denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act) between June 1, 2013 and February 28, 2016, and finding that Plaintiff became disabled again within the meaning of the Act on February 29, 2016.  Finding no error as alleged by Plaintiff in the Commissioner's final decision (the Appeals Council decision dated February 6, 2017), the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

On February 22, 2010, Plaintiff was found disabled as of March 17, 2009. (R. 82). Thereafter, based on a continuing disability review, it was determined that Plaintiff was no longer disabled as of June 1, 2013. (R. 78). Plaintiff disagreed with this determination, sought reconsideration, and after the reconsideration decision yielded the same result, sought a hearing before an administrative law judge (ALJ). (R. 135, 157-67, 171-72). After that hearing, an ALJ issued a decision on June 18, 2014 finding that Plaintiff's disability ended as of June 1, 2013. (R. 82-93). Plaintiff sought Appeals Council review of the decision (R. 212-14), which the Council granted and remanded the case for an ALJ to also adjudicate the period after June 1, 2013. (R. 103-04). On remand, a different ALJ held further proceedings and issued a decision on September 14, 2016 finding that Plaintiff's disability ended on June 1, 2013 and that he remained not disabled within the meaning of the Act through the date of that decision. (R. 109-21). Again, Plaintiff sought review of the ALJ's decision. (R. 15-21). Once again, on December 29, 2016 the Appeals Council granted Plaintiff's request and notified Plaintiff of its intent to decide that Plaintiff's disability ended on June 1, 2013, but that he became disabled again on February 29, 2016. (R. 266-69). The Appeals Council issued a decision to that effect on February 6, 2017. (R. 7-12).[1] Plaintiff filed a Complaint in this court seeking review of the Commissioner's decision on March 6, 2017. (Doc. 1).

---

[1] The Appeals Council's decision is the final decision of the Commissioner in this case. However, the Council adopted significant portions of the September 14, 2016 ALJ decision (R. 7), and those portions also constitute the final decision of the Commissioner. The court refers to the final decision in both instances as the Commissioner's decision, and will cite to specific portions of the Council's decision or of the ALJ's September 14, 2016 decision as necessary.

2

Proceedings are now complete and the case is ripe for decision.  Plaintiff argues that the decision is unsupported by the evidence because the ALJ erroneously accorded excessive weight to the medical opinions of the state agency consultants and insufficient weight to the medical opinions of Plaintiff's primary care physician and his chiropractor, and that the mental residual functional capacity (RFC) is unsupported because the ALJ erroneously rejected the opinion of Plaintiff's therapist.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the Commissioner's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

3

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is

not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner has promulgated an eight-step sequential process to evaluate

termination of benefits.  Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir. 2004);

Jaramillo v. Massanari, 21 Fed. Appx. 792, 794 (10th Cir. 2001); 20 C.F.R.

§ 404.1594(f)(1-8).  If at any step a determination can be made that a recipient is unable

to engage in substantial gainful activity, evaluation under a subsequent step is not

necessary.  20 C.F.R. § 404.1594(f).  In step one, the Commissioner must determine

whether the recipient is presently engaged in substantial gainful activity.  Id.

§ 404.1594(f)(1).  Step two considers whether the recipient has a medically severe

impairment or combination of impairments which is equivalent to one of the impairments

listed in Appendix 1 to subpart P of the regulations.  Id. § 404.1594(f)(2).  If any or all of

the recipient's current impairment(s) meets or equals a listed impairment, his disability is

conclusively presumed to continue.  Id.  In step three, the Commissioner determines if the

recipient's impairment(s) which was present at the most recent favorable decision has

undergone medical improvement.  Id. § 404.1594(f)(3)&(b)(1).  To determine whether

medical improvement has occurred, the ALJ compares "the current medical severity of

that impairment(s) which was present at the time of the most recent favorable medical decision . . . to the medical severity of that impairment(s) <u>at that time</u>." <u>Id.</u> § 404.1594(b)(7) (emphases added).  Medical improvement has occurred when there is a decrease in medical severity, which is shown by "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." <u>Id.</u> § 404.1594(c)(1).

If medical improvement is found in step three, step four involves a determination whether that medical improvement is related to the recipient's ability to work.  <u>Id.</u> § 404.1594(f)(4).  In deciding whether medical improvement is related to the ability to work, the ALJ will compare the recipient's current RFC "based upon this previously existing impairment(s) with [his] prior residual functional capacity." <u>Id.</u> § 404.1594(b)(7).  "Unless an increase in the current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will <u>not</u> be considered to be related to [the recipient's] ability to work." <u>Id.</u> § 404.1594(c)(2) (emphasis added).

If, however, the most recent favorable decision was based upon a finding that the recipient's condition met or equaled the severity of an impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App.1), an RFC assessment would not have been made because RFC is not assessed until after consideration of the Listing of Impairments.  <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988); <u>compare</u>, 20 C.F.R. § 404.1520(e) (RFC assessed if impairment(s) do not meet or equal a listing), <u>with</u> § 404.1594(c)(3)(i) (if most recent favorable decision was based on a finding the

impairment(s) met or equaled a listing, an assessment of RFC would not have been made).  In such a case, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the Commissioner] will find that the medical improvement was related to [the recipient's] ability to work."  20 C.F.R. § 404.1594(c)(3)(i).

If the Commissioner determines, at step three, that there has been <u>no</u> medical improvement or, at step four, that any medical improvement is <u>not</u> related to the recipient's ability to work, he will determine that disability continues unless he finds at step five that certain statutory exceptions apply.  <u>Id.</u> § 404.1594(f)(5).  If medical improvement related to the recipient's ability to work <u>is</u> found at steps three and four, the commissioner will determine, at step six, whether <u>all</u> the recipient's <u>current impairments in combination</u> are severe.  <u>Id.</u> § 404.1594(f)(6).  If the recipient's current impairments in combination are severe, the Commissioner will assess his RFC at step seven "based on all [his] current impairments, and consider whether [he] can still do work [he has] done in the past."  <u>Id.</u> § 404.1594(f)(7).  If so, the recipient's disability benefits will be terminated.  <u>Id.</u>  If not, then the Commissioner will determine at step eight whether (when considering the recipient's current RFC, age, education, and past work experience) he can perform other work existing in the economy.  <u>Id.</u> § 404.1594(f)(8).  If so, the recipient's disability benefits will be terminated.  <u>Id.</u>

The burden in a termination case is on the Commissioner to show both (1) medical improvement related to the recipient's ability to work, and (2) that the recipient is

currently able to engage in substantial gainful activity.  Patton v. Massanari, 20 Fed.

Appx. 788, 789 (10th Cir. 2001) (citing Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir.

1994); and 20 C.F.R. 404.1594(a)); Jaramillo, 21 Fed. Appx. at 794 (same).  This eight-

step sequential evaluation process relates to the Commissioner's determination that

Plaintiff's disability ended as of June 13, 2013 and will be considered by the court with

respect to his "current" condition at that time.  The Commissioner determined that on

February 29, 2016, Plaintiff's condition began once again to meet the criteria of Listing

13.05(A)(1) of the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1

§ 13.05(A)(1) (Listing 13.05(A)(1)).  (R. 8).  Plaintiff does not allege error in that

determination.

Because each issue raised by Plaintiff alleges error in the ALJ's evaluation of the

opinions of medical sources, and because the applicable standard is the same, the court

addresses all of the alleged errors in one section.

## II.    Medical Opinions

Plaintiff argues that Dr. Geis's, Dr. Kaur's, and Dr. Lebeau's opinions are not

substantial evidence capable of supporting the Commissioner's decision.  This is so, in

Plaintiff's view, because these physicians are non-examining sources, and the opinions of

such physicians, when unaccompanied by thorough written reports or persuasive

testimony are not substantial evidence.  (Pl. Br. 42) (citing without pinpoint citation

Fleetwood v. Barnhart, 211 F. App'x 736 (10th Cir. 2007)).  He argues that although Dr.

Geis addressed Plaintiff's lymphoma and renal cell carcinoma he "did not address

Plaintiff's other 'severe' physical impairment of chronic pain syndrome and did not opine

7

any functional limitations related thereto," and did not consider or address Plaintiff's

"non-severe" impairments.  (Pl. Br. 42-43).  Plaintiff argues that Dr. Kaur accorded great

weight to a physical capacity profile to which the ALJ and the Appeals Council accorded

only little weight.  He asserts this opinion is "in direct conflict with the [Commissioner's]

decision," rendering it error to afford Dr. Kaur's opinion great weight.  He argues that,

like Dr. Geis, Dr. Kaur and Dr. Lebeau (to whose opinion the ALJ accorded only partial

weight) did not account for limitations resulting from chronic pain syndrome or from

Plaintiffs "non-severe" impairments.  (Pl Br. 43).

     Plaintiff next argues that the ALJ erroneously rejected the opinions of Plaintiff's

treating providers, Dr. Eplee and Dr. Pregont.  He argues that the ALJ's rejection of Dr.

Pregont's opinion because she is not an acceptable medical source "is not a proper legal

basis on which to reject the opinion," and that he is required to weigh such an opinion in

accordance with the regulatory factors used in weighing medical source opinions.  Id. at

44.  He argues that the ALJ's conclusory statement that Dr. Pregont's opinion is not

supported by the objective evidence failed to identify the inconsistencies upon which he

relied and deprives the court of meaningful review, thus requiring remand.  Id., citing

Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004); Krauser v. Astrue, 638 F.3d

1324, 1331 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004);

and Cagle v. Astrue, 266 F. App'x 788, 794 (10th Cir. Feb. 25, 2008).

     Plaintiff argues that the ALJ also erroneously rejected Dr. Eplee's opinion.  He

argues that it "simply isn't the case" that Dr. Eplee's opinion was based on Plaintiff's

subjective reports as the ALJ found.  Id. at 44-45.  He argues that the ALJ's finding that

"there was no evidence of back arthritis or [of] hip, neck, and knee pain ... conflicts with the ALJ's own findings [sic] of a 'severe' impairment of chronic pain syndrome." Id. at 45. He argues that the ALJ erred when she stated that "Plaintiff didn't report his fatigue and pain to other physicians," and when he found Dr. Eplee's opinion inconsistent with Plaintiff's daily activities. (Pl. Br. 45). He argues that the ALJ did not consider the deference to which Dr. Eplee's opinion is due. Id. at 47-48.

Finally, Plaintiff argues error in the ALJ's evaluation of the opinion of a Licensed Professional Counselor (LPC) who treated Plaintiff--Mr. Fangman, LPC. He argues it was error to discount LPC Fangman's opinion because not being an "acceptable medical source" is not a proper basis to reject the opinion and because Plaintiff was prescribed medication for his mental impairments from Dr. Eplee, and there was no requirement that he see a psychiatrist or psychologist. Id. at 48-49.

The Commissioner argues that the ALJ properly evaluated the medical source opinions and that the record evidence supports that evaluation. She points out that an ALJ is entitled to consider and rely on the opinions of non-examining physicians so long as she explains the weight accorded, and gives good reasons for doing so. (Comm'r Br. 5-6). She argues that the non-examining physicians' opinions do not conflict with the ALJ's finding of "severe" chronic pain syndrome and that the ALJ's decision to accord only partial weight to Dr. Lebeau's opinion operated in Plaintiff's favor because if the ALJ had accorded that opinion greater weight it would have resulted in the ALJ assessing fewer and/or lesser functional limitations. Id. at 6-7.

She argues that the ALJ's reasons for discounting Dr. Eplee's opinions are supported by the record evidence, and that the ALJ properly considered Plaintiff's level of activity in evaluating Dr. Eplee's opinions.  Id. at 7-8.  She argues that Plaintiff has not provided evidence or argument to establish that Dr. Eplee's opinion is due any special deference in the circumstances of this case.  Moving to Dr. Pregont's opinion, the Commissioner argues that the ALJ is entitled to rely on the fact Dr. Pregont, as a chiropractor, is not an "acceptable medical source" within the meaning of the regulations, as one among several reasons to discount her opinion.  Id. at 9.  Finally, she argues that the ALJ properly considered LPC Fangman's opinion, and the record evidence supports her evaluation.  Id. at 10.

In his Reply Brief, Plaintiff argues that the Commissioner's arguments supporting the ALJ's evaluation of Dr. Geis's opinion are "a disingenuous attempt at post hoc justification of Dr. Geis' [sic] opinions" because Dr. Geis could not have relied on later-produced records in formulating his opinion.  (Reply 2).  He cites the treatment records in the evidence and explains why in his view they cannot support Dr. Geis's opinion.  Id. at 2-4.  He reasserts his argument that the Commissioner's summary conclusion, that Dr. Geis's and Dr. Kaur's opinions are consistent with the record considered as a whole, is beyond meaningful judicial review, and reiterates his other arguments regarding consideration of Plaintiff's other impairments, regarding the July 2013 physical capacity profile, and regarding Dr. Lebeau's opinion.  Id. at 4-6.

Plaintiff reasserts the evidentiary bases for his view that the ALJ did not provide good reasons for rejecting Dr. Eplee's opinions.  Id. at 7-8.  He admits that Dr. Pregont's

treatment notes are not in the record, and argues that the ALJ should have fulfilled his duty to develop the record and obtained these records even though Plaintiff was represented by counsel.  Id. at 9.  For the first time, Plaintiff argues in his Reply Brief that the ALJ missed that Plaintiff's renal cell carcinoma was not in remission until November 2015 and implies that consequently, his condition did not experience medical improvement in June 2013.  Id. at 10.  Plaintiff also reiterates his argument regarding LPC Fangman's opinion.

### A.    Standard for Evaluating Medical Source Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating source[2] opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017).  A physician who has treated a patient frequently over an extended period (a

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 404.1502.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2017) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300

(quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with the other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Recognizing the reality that claimants have their medical care provided by health care providers who are not "acceptable medical sources," the Commissioner promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2017). Chiropractors are such health care providers, are not "acceptable medical sources," and are defined as "other" medical sources.  20 C.F.R. § 404.1513(d)(1).

SSR 06-3p explains that the opinions of "other" medical sources will be evaluated using the regulatory factors cited above for evaluating medical opinions; West's Soc. Sec. Reporting Serv., Rulings at 331-32 (citing 20 C.F.R. § 404.1527); and explains that an ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  Id. at 333.

## B.    The Commissioner's Evaluation of the Medical Source's Opinions

The court addresses here only the Commissioner's evaluation of the opinions which Plaintiff has placed in issue in his Brief.  Here, the Appeals Council adopted the ALJ's "findings relating to the termination of disability benefits on June 1, 2013, due to medical improvement."  (R. 8).  The Council adopted the ALJ's RFC assessment for a reduced range of light exertional work as of June 1, 2013 and applied it to the period from June 1, 2013 through February 28, 2016.  (R. 8) (citing Finding 9 of the September 14, 2016 Hearing Decision); see also (R. 114-19).  The Council adopted the ALJ's conclusions regarding the severity of Plaintiff's mental impairments at step two of the eight-step evaluation process in determining whether Plaintiff's condition on June 1,

2013 met or equaled a Listed Impairment.  (R. 8) (citing Hearing Decision, pp.4-5 (R.

112-13)).  The Council explained that:

> the Listing requirements have changed, with the ability to adapt or manage
> oneself being new criteria.  There is no indication in the evidence that the
> claimant's mental impairments rise to a level of "marked" or "extreme" in
> this area of functioning.

Id. at 8 (citing Exs. 54F, p.6; 56F, p.3; 60F, p.23).  The Council afforded great weight to

both Dr. Geis's and Dr. Kaur's opinions through February 28, 2016.  Id. at 8-9 (citing

Exs. 19F, 20F (Dr. Geis's opinion), 31F (Dr. Kaur's opinion)).

In her RFC analysis, which the Appeals Council adopted, the ALJ explained the

weight she had accorded to each of the opinions of the medical sources Plaintiff places at

issue here.  (R. 114-19).  She addressed Dr. Eplee's opinions throughout her analysis,

noting that on May 21, 2014 Dr. Eplee merely copied a previous report.  (R. 116).  The

ALJ noted that Dr. Eplee stated that Plaintiff had "'severe' arthritis in the back with neck,

hip, and knee pain," but the ALJ found "no objective evidence to support 'severe'

arthritis in the back, nor hip pain, and on exam, the claimant ambulated without

difficulty."  Id. (citing Ex. 44F/3-4).  She accorded little weight to this opinion "because

it is not consistent with the evidence as a whole or the claimant's daily activities and

appears based on subjective complaints."  Id.  Immediately thereafter, the ALJ further

explained her bases for finding Dr. Eplee's opinions were based on Plaintiff's subjective

complaints.

> On July 24, 2014, the claimant wanted Dr. Eplee to provide work
> restrictions because he was losing his disability.  At that time, his only
> medications were Norco and Lorazepam.  Dr. Eplee did not provide work
> restrictions and told the claimant to get a form from his attorney to help

> outline what his restrictions should be.  I find this further supports that the
> restrictions Dr. Eplee provides are based on the claimant's subjective
> complaints and not on objective evidence that shows the claimant does not
> have such severe limitations.  That day, Dr. Eplee gave the claimant a
> short-term disability handicap tag, but there is no objective evidence
> supporting the need for such a tag (Ex 44F/6-7).

(R. 116).

The ALJ found that Dr. Eplee's October 2, 2014 concern regarding recurrent

lymphoma was not accurate because "the claimant's lymphoma remained in remission

through at least 2015," and she accorded Dr. Eplee's concurrent October 2, 2014 opinion

only little weight.  Id.  The ALJ found:

> there is no objective evidence to support the degree of pain and fatigue
> described in Dr. Eplee's records, and the claimant did not have recurrent
> lymphoma as his treatment note indicated (Ex 44F/15-17).  In addition,
> when the claimant saw other doctors, their notes do not report such degrees
> of pain and fatigue.

Id.  The ALJ considered an opinion in Dr. Eplee's treatment note of March 12, 2015

which:

> indicated the claimant was really troubled and disabled, that he could not
> function in any normal work environment, that he could not engage in
> stressful interpersonal relations, and had no capacity for hard physical labor
> because of physical limitations brought on by his two types of cancer (Ex
> 44F/27).  I give this opinion little weight because it is not supported by the
> evidence as a whole that shows the claimant requires little mental health
> treatment and there is no objective evidence from his cancer doctors
> showing his cancers was [sic] not in remission.  Again, on April 21, 2015,
> Dr. Eplee advocated that the claimant not return to work but also that he get
> more work training (Ex 44F/32).

Id., at 116-17.  The ALJ found no objective evidence to support significant lumbar pain

despite Dr. Eplee's indication of "'lots' of lumbar pain," and she noted that although Dr.

Eplee's records indicated significant problems with fatigue, "when the claimant saw Dr.

16

Mirza on June 18, 2016, he felt well overall and denied fatigue." Id. at 118.  The ALJ considered Dr. Eplee's mental medical source statement dated May 24, 2016 in which he opined that Plaintiff had moderate, marked, and extreme limitations of function, would be off task more than 25% of the day, would miss more than four days of work a month, and experienced medication side effects.  Id.  She accorded little weight to this opinion because Dr. Eplee's treatment notes reflected no medication side effects, because it was not consistent with the medical evidence regarding mental impairments, because Dr. Eplee is not a specialist in mental health treatment, and because he never referred Plaintiff to a mental health specialist.  (R. 118).

The ALJ considered LPC Fangman's treatment of Plaintiff and evaluated his mental medical source statement and accorded it only little weight because "he is not an acceptable medical source, he has never referred the claimant for treatment with a psychiatrist or psychologist, and he left a number of boxes on the medical source statement blank." Id.  She also found that LPC Fangman's suggestion that Plaintiff could go to vocational rehabilitation to learn a skill to prepare for a job "does not support disabling mental health symptoms." Id.

The ALJ accorded only little weight to the opinion of Dr. Pregont because it was dated May 19, 2014 but based on treatment in 2013, included significant limitations not supported by the objective evidence, there were no supporting treatment notes, and Dr. Pregont is not an acceptable medical source.  Id. at 119.

The ALJ weighed the physical capacity profile dated July 2, 2013 and accorded it little weight because it provides no specific functional limitations beyond a 2.95 job level.  Id.

Finally, the ALJ weighed the opinions of the state agency physicians and psychologists who reviewed the record evidence and opined regarding Plaintiff's limitations.  (R. 119).  She accorded great weight to the opinions of Dr. Geis and Dr. Kaur "because they are consistent with the record when considered in its entirety," and because although they are not treating or nontreating sources, they have "significant program knowledge."  Id.  As to the state agency psychologists, she accorded only partial weight to Dr. Blum's opinion that Plaintiff's mental impairments are not severe, but greater weight to Dr. Schulman's opinion that Plaintiff has moderate limitations in concentration, persistence, or pace "because it is consistent with the record when considered in its entirety."  Id.

## C.    Analysis

As noted above, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905.  The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g).  The question for the court is whether the record evidence supports the Commissioner's decision.

The court begins, as did the ALJ, with consideration of the treating source opinions of Dr. Eplee.  Although the ALJ did not specifically state why she did not accord controlling weight to Dr. Eplee's opinions, the summary of her discussion above reveals at least that she found the opinions inconsistent with other evidence in the record. Evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2017).  And, the court's review agrees with the ALJ's conclusion, thus justifying her decision not to accord controlling weight.

As the Commissioner's Brief suggests, Plaintiff did not address the ALJ's consideration of Dr. Eplee's opinions considered as a whole, but focused on alleged errors in the individual reasons provided for discounting the opinions.  The court will address Plaintiff's arguments individually also, but recognizes that the ALJ provided additional rationale for her findings which have not been attacked by Plaintiff and which provide additional support for the findings at issue.

Plaintiff argues that Dr. Eplee cited clinical findings to support his opinions, so it is simply not the case that he based his opinions on Plaintiff's subjective reports.  While Dr. Eplee did cite clinical findings in support of his opinions, a fair reading of his numerous medical source statements and certain of his treatment notes leaves the impression that his opinions were based in part on a less-than-critical consideration of Plaintiff's complaints.  The Tenth Circuit has instructed that "[i]n choosing to reject the

treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based on plaintiff's subjective complaints, her conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley, 373 F.3d at 1121. However, an ALJ may properly reach such a conclusion if it is based upon evidence taken from the physician's records. Victory v. Barnhart, 121 F. App'x. 819, 823-24 (10th Cir. 2005). That is precisely what happened here. As quoted above, the ALJ noted that her finding is supported by Dr. Eplee's instructing Plaintiff "to get a form from his attorney to help outline what his restrictions should be." (R. 116).

Plaintiff's argument that the ALJ's finding of "no evidence of back arthritis[,] or hip, neck, and knee pain . . . conflicts with the ALJ's own finding of a 'severe' impairment of chronic pain syndrome" (Pl. Br. 44), misunderstands the ALJ's finding. The ALJ found "no objective evidence to support 'severe' arthritis in the back, nor hip pain, and on exam, the claimant ambulated without difficulty." (R. 116) (citing Ex. 44F/3-4). Contrary to Plaintiff's argument, the ALJ found arthritis in the back but not "severe" arthritis in the back, she did not find hip pain, and she found knee pain that nonetheless allowed ambulating without difficulty at that examination. Thus, her finding is not inconsistent with her finding of chronic pain syndrome.

Similarly, Plaintiff argues that the ALJ erred in stating that "Plaintiff didn't report his fatigue and pain to other physicians, however, this is simply inaccurate." (Pl. Br. 45). But what the ALJ found was that there was "no objective evidence to support the degree

of pain and fatigue described in Dr. Eplee's records," and when Plaintiff "saw other doctors their notes do not report such degrees of pain and fatigue." (R. 116) (emphases added). The ALJ recognized that Plaintiff reported pain and fatigue to other physicians, but she also recognized that the other physicians did not record such extreme pain or fatigue as did Dr. Eplee. Two other findings of the ALJ shed additional light on this issue. She noted that Plaintiff had a "history of abusing Hydrocodone," and in his case "the amount of pain medication taken is not a good indication of the degree of pain." (R. 117). She also noted that on May 24, 2016 when Plaintiff visited Dr. Eplee, the doctor recorded lots of lumbar pain, but on a visit less than a month later Dr. Mirza recorded that Plaintiff felt well overall and denied fatigue. (R. 118) (citing R. 1205, 1244).

Plaintiff argues the ALJ erred in finding Dr. Eplee's opinions not consistent with Plaintiff's daily activities. (Pl. Br. 45-46). He argues this is so because "the performance of household tasks does not does not establish that a person is capable of engaging in substantial gainful activity." Id. at 46 (citing Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993)). Plaintiff is correct that Thompson stands for the proposition that performance of household tasks does not equate to gainful activity. But that is not the point of the ALJ's finding here. She was pointing out that the daily activities admittedly performed by Plaintiff are inconsistent with the extreme limitations opined by Dr. Eplee. The citation from Thompson to which Plaintiff appeals concerns an ALJ using the claimant's daily activities to question the credibility of the claimant's allegations of disability, not pointing out the inconsistencies between the claimant's activities and the limitations opined by the claimant's physician.

21

Plaintiff then argues that in finding Dr. Eplee's opinions inconsistent with Plaintiff's daily activities, the ALJ was substituting her own medical expertise for that of Dr. Eplee.  (Pl. Br. 46) (citing Kemp v. Bowen, 816 F.2d 1469, 1476 (10h Cir. 1987)[3]). As Plaintiff suggests, the Tenth Circuit has held that an ALJ oversteps her bounds when she substitutes her medical judgment for that of a treating physician.  Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996).  In Winfrey, Dr. Spray, a clinical psychologist, treated Mr. Winfrey, administered a battery of tests including the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), and diagnosed him with, among other diagnoses, somatoform disorder.  Id. at 1021.  Nonetheless, the ALJ found that Mr. Winfrey did not have a somatoform disorder, in part, because the ALJ was of the opinion "that Dr. Spray improperly used the MMPI-2 as a basis for the diagnosis."  Id. at 1022.  The court noted that "the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis."  Id. (citing Kemp, 816 F.2d at 1476).

In Kemp, the court noted that

> there was not even evidence from a consulting physician retained by the agency to contradict the medical diagnosis, findings, and conclusions of her treating physician, Dr. Brown.  While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant.

816 F.2d at 1476.  As stated in a more recent case, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical

---

[3] In a clear typographical error, Plaintiff identified Kemp at 186 F.2d.

reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and <u>not due to his or her own credibility judgments, speculation or lay opinion</u>." <u>McGoffin</u>, 288 F.3d at 1252 (emphasis in original).

The court in <u>Kemp</u> recognized that the ALJ "is authorized to make a final decision concerning disability." Indeed, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." <u>Howard v. Barnhart</u>, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." <u>McDonald v. Astrue</u>, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." <u>Dixon v. Apfel</u>, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

Here, although the ALJ discounted part of Dr. Eplee's opinion, she did not substitute her "medical expertise" for that of Dr. Eplee. Rather, as noted above she considered and summarized all of Dr. Eplee's opinion, discounted part of it, and explained her evidentiary bases for doing so. She accepted his diagnoses, but disagreed with the degree of the functional limitations he assessed because they were inconsistent with daily activities performed by Plaintiff. That is not substituting her medical expertise for that of Dr. Eplee, rather that is making an administrative evaluation of the evidence, which is her responsibility as the ALJ in this case. As discussed herein, Plaintiff has

shown no error in the rationale relied upon to discount Dr. Eplee's opinions, and she has not shown in what way the opinions were entitled to greater deference than given.

The ALJ accorded only little weight to the opinion of Dr. Pregont because it was dated May 19, 2014 but based on treatment in 2013, included significant limitations not supported by the objective evidence, Dr. Pregont is not an acceptable medical source, and there are no supporting treatment notes. Id. at 119. Plaintiff is correct that the fact Dr. Pregont is not an acceptable medical source by itself is not a proper basis to reject her opinion and the ALJ must weigh such opinions considering the regulatory factors. But, the ALJ did not reject Dr. Pregont's opinion solely because she is not an acceptable medical source, and she weighed the opinion considering the regulatory factors as required by SSR 06-3p.

Plaintiff's argument that the ALJ erred in discounting Dr. Pregont's opinion because it is unsupported by the objective evidence fairs no better. While it is true that an ALJ is required to ensure that her findings are "'sufficiently specific' to enable this court to meaningfully review h[er] findings," she is not required to ensure that every reason in her decision is spelled out in detail when it is explained elsewhere in the decision at issue. Langley, 373 F.3d at 1123. The court in Langley specifically noted that it was unable to meaningfully review the ALJ decision in that case because it did not "see obvious inconsistencies between Dr. Williams's opinion and the medical records of other examining physicians." Langley, 373 F.3d at 1122.

Here, the ALJ summarized and discussed the record evidence extensively, and the Appeals Council found that between June 1, 3013 and February 28, 2016 Plaintiff could

24

lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, and is able to stand and/or walk up to six hours total in a workday and sit up to six hours total in a workday. (R. 10-11, 114-19). And the ALJ adopted and incorporated into her decision the summary of the medical evidence contained in the June 18, 2014 ALJ's decision. (R. 115) see also (R. 87-92). Unlike the court in Langley, the court sees inconsistencies between the medical evidence and the limitations opined by Dr. Pregont. The fact that Dr. Pregont's and Dr. Eplee's opinions are generally consistent is of little consequence, since as noted above, the ALJ properly discounted Dr. Eplee's opinions.

The court notes another issue with the ALJ's evaluation of Dr. Pregont's opinion and the parties' arguments. Both parties seem to agree that the ALJ discounted Dr. Pregont's opinion, in part, because the record does not include any of her treatment records. The Commissioner argues that this is an appropriate basis to discount Dr. Pregont's decision (Comm'r Br. 9), and Plaintiff argues that to fulfill her duty to develop the record, the ALJ should have obtained Dr. Pregont's treatment records. (Reply 9). The court disagrees with both parties' view of the decision and the record. The ALJ specifically discounted Dr. Pregont's opinion because it was formulated on May 19, 2014, but "based on treatment in 2013." (R. 119). The ALJ stated that she had reviewed "all of the evidence of record" (R. 110), and had considered "the entire record" (R. 111), and the record includes Dr. Pregont's treatment notes from August 19, 2013 through September 30, 2013. (R. 859-64). The ALJ stated that she had discounted Dr. Pregont's opinion, in part, because "there are no supporting treatment notes." (R. 119) (emphasis added). In the circumstances presented here, the court understands the decision to mean

that there are no limitations contained in Dr. Pregont's treatment notes which support the limitations opined.

The ALJ discounted LPC Fangman's opinion because he is not an acceptable medical source, he never referred the claimant for treatment by a psychiatrist or psychologist, he left some boxes on his medical source statement blank, and his suggestion that Plaintiff could go to vocational rehabilitation to prepare for a job is contrary to the disabling limitations opined.  (R. 118).  Plaintiff again argues that the fact LPC Fangman is not an acceptable medical source is not a proper legal basis to discount his opinion, but as with Dr. Pregont, that is not the sole basis relied on to discount the opinion.  Plaintiff is correct that there is no underline(requirement) that LPC Fangman refer Plaintiff to see a psychiatrist or psychologist, and that he was providing therapy to Plaintiff. However, as the ALJ noted, LPC Fangman is not an acceptable medical source and if Plaintiff's condition is as disabling as LPC Fangman opined, Plaintiff may have profited from a referral for such treatment.  Moreover, as the ALJ noted, Plaintiff's sessions with LPC Fangman "centered on problems dealing with his 10-year old son." (R. 118).  In his Reply Brief, Plaintiff argues that a referral to vocational rehabilitation is not an indication Plaintiff can work, but it does suggest that LPC Fangman believed Plaintiff may be able to work despite the limitations he opined, and is a valid reason to discount his opinion. Plaintiff does not even address the ALJ's finding that LPC Fangman left some boxes blank in his medical source statement.  The court finds no error in the ALJ's evaluation of the opinions of the medical sources who treated Plaintiff.

Having discounted the opinions of the medical sources who treated Plaintiff, the ALJ turned to the medical opinions of the state agency physical consultants, and accorded them great weight because they are consistent with the record evidence "considered in its entirety" and because the consultants have "significant program knowledge." (R. 119) (citing the opinions of Dr. Geis and Dr. Kaur). The Appeals Council also discussed these opinions and accorded them great weight because they are expert medical opinions and "are supported by the record through February 28, 2016." (R. 8-9).

Plaintiff first argues that Dr. Geis's and Dr. Kaur's opinions cannot support the Commissioner's decision because they are non-examining sources, and the opinions of such physicians, when unaccompanied by thorough written reports or persuasive testimony are not substantial evidence. (Pl. Br. 42) (citing without pinpoint citation Fleetwood v. Barnhart, 211 F. App'x 736 (10th Cir. 2007)). Plaintiff's argument states the law as a general principle, but he fails to acknowledge that both Dr. Geis and Dr. Kaur explained the bases for their opinions in their reports. (R. 698, 704-05, 798-99). He argues that although Dr. Geis and Dr. Kaur addressed Plaintiff's lymphoma and renal cell carcinoma they did not account for limitations resulting from Plaintiff's chronic pain syndrome and did not consider or address Plaintiff's "non-severe" impairments. (Pl. Br. 42-43). Plaintiff's argument ignores that each physician was instructed to base his or her "conclusions on all evidence in file" (R. 697, 792), and that both physicians are state agency medical consultants "highly qualified physicians … who are also experts in Social Security disability evaluations." 20 C.F.R. § 404.1527(e)(2)(i). Plaintiff points to no evidentiary basis to believe these program physicians failed to consider chronic pain

27

syndrome or Plaintiff's non-severe impairments, or that the RFC for a reduced range of light work assessed by the ALJ and the Appeals Council does not provide sufficient limitations to accommodate Plaintiff's chronic pain syndrome or his non-severe impairments. Plaintiff merely assumes that the physicians should have mentioned chronic pain syndrome and Plaintiff's non-severe impairments and that such impairments would require limitations greater than those assessed. In essence, Plaintiff merely asks the court to reweigh the evidence and find greater limitations than those assessed by the Commissioner. As noted above, it is without authority to do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Finally, Plaintiff argues that Dr. Kaur accorded great weight to a physical capacity profile to which the ALJ and the Appeals Council accorded only little weight. He asserts this opinion is "in direct conflict with the [Commissioner's] decision," rendering it error to afford Dr. Kaur's opinion great weight. (Pl. Br. 43). Plaintiff's argument ignores that it is the Commissioner (the Appeals Council, relying in specific part on the ALJ's decision) who made the decision in this case, not Dr. Kaur. Neither the ALJ nor the Council accorded controlling weight to Dr. Kaur's opinion. They accorded that opinion great weight, but that does not mean they accepted all of the opinion. There is no requirement that an opinion must be accepted or rejected in toto. As Plaintiff admits, the ALJ accorded little weight to the physical capacity profile at issue (R. 119), and the Appeals Council adopted that determination "for the period of June 1, 2013 through February 28, 2016." (R. 9).

As a final matter, the court notes that Plaintiff argues that it is the Commissioner's burden to prove medical improvement related to Plaintiff's ability to work.  Plaintiff was found disabled in 2009 because his condition met Listing 13.05A2.  (R. 10).  On June 1, 2013, medical improvement was found because Plaintiff's condition no longer met the criteria of that Listing.  (R. 112).  In a case such as this, where "medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision, [the Commissioner] will find that the medical improvement was related to [the recipient's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i).  Plaintiff does not demonstrate the error in any of the Commissioner's findings in this regard, and he does not argue that the regulations are erroneous.  Therefore, he has not shown that the Commissioner failed to meet his burden to show medical improvement related to the ability to work.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 20, 2018, at Kansas City, Kansas.


 s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

29